# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

YOGESH SHAH,
      Petitioner,

v.                                                         Case No. 03-C-1266
                                                         (Criminal Case No. 99-CR-211)

UNITED STATES OF AMERICA,
      Respondent.

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 2255, petitioner Yogesh Shah challenges his conviction of fraud and related offenses. He alleges that: (1) his trial and appellate lawyers were ineffective, (2) the indictment was deficient, (3) the indictment was constructively amended at trial, (4) the evidence was insufficient, (5) his sentence was improperly enhanced, and (6) the government presented perjured testimony. In connection with his first claim, petitioner contends, <u>inter alia</u>, that his appellate counsel, Jonathan Smith,[1] failed to order the transcripts of his trial, then improperly induced him to dismiss his direct appeal. I previously determined that I would first address petitioner's claim that Smith was ineffective because if petitioner prevailed on the claim, he could resurrect his direct appeal and present most of his other claims in that proceeding. I therefore ordered the parties to brief the issue and

---

[1] Attorney Peter Kovac represented petitioner at trial. Petitioner retained the firm of Boyle, Boyle and Smith to represent him at sentencing and on appeal, and Smith handled the matter for the firm. On or about October 21, 2002, Smith left the Boyle firm and joined another firm.

held an evidentiary hearing. Based on the entire record, I conclude that Smith was ineffective.

## I. FACTS

After a court trial, I found petitioner guilty of bank and wire fraud, and inducing a person to travel in interstate commerce in execution of a scheme to defraud. Before sentence, petitioner fled the country. He was subsequently arrested and returned, and on July 1, 2002, I sentenced him to 144 months in prison on the fraud charges.[2] On July 15, 2002, Smith filed a notice of appeal on petitioner's behalf.

Smith did not order the trial transcripts from the court reporter. Nevertheless, on August 27, 2002, when the appellate brief came due, Smith filed a motion for a thirty-day extension, stating that he needed the transcripts in order to advise petitioner whether to go ahead with the appeal or bring a § 2255 motion alleging ineffective assistance of trial counsel. (Petr.'s Ex. 110.) In support of his motion, Smith stated: "That to finalize this evaluation it will be necessary for affiant to have obtained the trial transcripts and further that in either event, either direct appeal or appeal to the trial court the transcripts will be necessary for the pursuit of the same in order to thoroughly brief the issue for the reviewing court." (Id. ¶ 6.) The court of appeals granted Smith's motion and extended the due date for the brief to September 26.

On September 25, Smith filed another motion for an extension, stating that he still did not have the transcripts, which he needed "to discuss further with the Appellant the merits of filing an appeal with this Honorable Court versus a § 2255 motion with the Trial Court."

---

[2]Because he absconded, petitioner was later convicted of violating 18 U.S.C. § 3146(a)(1), but that conviction is not at issue in the present proceeding.

2

(Petr.'s Ex. 112 ¶ 5.) He stated that without the transcripts he could not "finish the appellate brief or discuss the merits of proceeding with direct appeal or by way of motion to the trial court." (Id. ¶ 6.) The court again granted the request, making the new due date October 17. Between September 24 and October 17, Smith did not speak to petitioner or obtain the transcripts.

On October 17, Smith spoke to petitioner by phone. Petitioner states that Smith told him that the Seventh Circuit was after him to file the brief. Petitioner also states that Smith advised him to withdraw the appeal for now so as not to "piss off" the government and jeopardize the possibility of obtaining a Rule 35 motion for a reduction of sentence based on substantial assistance. At the time, petitioner hoped that his cooperation would result in such a motion. Petitioner further states that he told Smith that he did not want to lose his appeal rights, and that Smith told him that he could file the brief later. Petitioner states that he understood Smith to be placing the appeal on hold while he pursued other options. Smith testified that during the October 17 phone call petitioner agreed to dismiss the appeal in favor of filing a § 2255 motion. He denied stating that he was placing the appeal on hold.

On October 18, Smith advised the Seventh Circuit that petitioner wished to withdraw his appeal and asked for an extension so that he could file a written statement to that effect. (Petr.'s Ex. 114.) The court granted the request. On November 18, Attorney Bridget Boyle (who handled petitioner's case after Smith left the firm) filed a motion to withdraw the appeal (Petr.'s Ex. 126) and attached to it a statement that Smith had drafted and petitioner had signed, stating: "I, Yogesh Shah, in consideration of matters public and private and in consultation with counsel, hereby voluntarily withdraw United States Court of Appeal for the Seventh Circuit Appeal No. 02-2858." (Petr.'s Ex. 117; R. 31 Ex. 1.) The next day, the court

3

granted the motion and dismissed the appeal.  On March 17, 2003, petitioner filed a pro se motion to recall the mandate, which the court of appeals promptly denied.

## II.  APPLICABLE LEGAL STANDARDS

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel, both at trial and in the defendant's first appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 396 (1985).  Generally, in order to show a violation of this right the defendant must demonstrate that (1) counsel performed deficiently, and (2) he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984).

In order to demonstrate deficient performance, the defendant must identify acts or omissions of counsel that were not the result of reasonable professional judgment.

> The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. . . .
>
> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

Id. at 690-91.

In order to demonstrate prejudice, the defendant ordinarily "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the deficient performance arose in the context of counsel's advice concerning an appeal, the defendant must demonstrate that

4

there is a reasonable probability that, but for counsel's deficient performance and advice, he would have pursued an appeal. See Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000); see also Hill v. Lockhart, 474 U.S. 52, 50 (1985) (holding, in the related context of waiving the right to trial, that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). However, if appellate counsel abandoned the defendant by failing to perfect an appeal that the defendant wanted to pursue, the court will presume prejudice. See Griffin v. United States, 109 F.3d 1217, 1219-20 (7th Cir. 1997) (providing examples of abandonment, e.g., failing to file a brief or advising the client to dismiss the appeal in favor of a non-existent motion); see also Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994) (holding that if counsel fails to file an appeal on request, prejudice is presumed, without regard to the merit of any possible issues on appeal).

### III. DISCUSSION

**A.    Performance**

Smith performed deficiently by advising petitioner to dismiss his direct appeal without first obtaining the trial transcripts. Not having represented petitioner at trial, Smith had no reliable way of finding out whether petitioner had meritorious appellate issues other than to review the transcripts.[3] See, e.g., Hardy v. United States, 375 U.S. 277, 279-80 (1964) (stating that appellate counsel who did not represent the defendant at trial cannot discharge his obligations as counsel without reviewing the trial transcripts).

> As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through

---

[3] Smith conceded as much in his extension motions.

5

>which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law. Anything short of a complete transcript is incompatible with effective appellate advocacy.

Id. at 288 (Goldberg, J., concurring) (internal citations, quote marks and footnote omitted). In the present case, it was unreasonable for Smith to advise petitioner to forego his appeal without conducting a proper investigation. See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (discussing counsel's duty to investigate or make a reasonable determination that a certain investigation is unnecessary). The adversarial process cannot function when appellate counsel does not take the steps necessary to determine whether his client has meritorious appellate issues. See Strickland, 466 U.S. at 690-91 (stating that it is counsel's function to make the adversarial testing process work).

Smith testified that petitioner's primary complaint seemed to be with the performance of his trial counsel, which is ordinarily best challenged in a § 2255 motion. He acknowledged that while it would have been better to have the transcripts before dismissing the appeal, he relied on defendant's assessment. However, petitioner is not a lawyer, and it was unreasonable of Smith to ignore the possibility of raising other issues merely because petitioner focused on the performance of trial counsel. It is the job of counsel to review the record and determine whether appellate issues exist. Jones v. Barnes, 463 U.S. 745, 752 (1983) ("There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review."). Further, in advising petitioner to dismiss his appeal, Smith did not disclose to him that he could have pursued an appeal and also brought a § 2255 motion. Petitioner did not face an either/or situation. See United States v. Gilliam, 255 F.3d 428, 437 (7th Cir. 2001)

6

(allowing defendant to withdraw ineffective assistance claims from consideration on direct appeal and preserve them for collateral review, while advancing other issues).

Finally, Smith indicated that he also took into consideration petitioner's hope of obtaining a Rule 35 sentence reduction motion. However, Rule 35 motions rest within the discretion of the government, see Wade v. United States, 504 U.S. 181, 185-86 (1992), and there is no evidence in the record suggesting that Smith had a reasonable basis to believe that petitioner's cooperation would yield such a motion. Nor is there any evidence that the government would have been more likely to make a Rule 35 motion if petitioner dismissed his appeal. Therefore, it was not reasonable to advise dismissal of the appeal in the hope of such a motion.

The government points out that petitioner signed a statement agreeing to withdraw his appeal, and in an accompanying letter to Smith stated: "Hope you will file the ineffective counsel motion with Judge Adelman." (Govt. Ex. 4.) However, because Smith did not competently advise petitioner, his "withdrawal" of the appeal in favor of a possible § 2255 motion was not knowing and voluntary.[4] See Griffin, 109 F.3d at 1218 n.4 (finding that the defendant could obtain § 2255 relief notwithstanding signed statement dismissing the appeal if the waiver was not voluntary).

Therefore, for all of these reasons, Smith performed deficiently when he advised petitioner to dismiss his appeal.

---

[4]The withdrawal statement is also deficient. See n.5, infra.

7

Case 2:03-cv-01266-LA   Filed 07/28/06   Page 7 of 10   Document 85

**B. Prejudice**

It may be that prejudice should simply be presumed. Although not identical to Griffin, the present case is similar to it. In Griffin, appellate counsel filed a notice of appeal, but then took no action to prosecute the appeal, ignored court orders, and ultimately advised his client to dismiss the appeal and instead to file a non-viable motion under Rule 35. The lawyer in Griffin also had a personal incentive to encourage the defendant to dismiss the appeal; he was facing sanctions from the court of appeals for not prosecuting the case. Under these circumstances, the court held that prejudice could be presumed. 109 F.3d at 1220.

In the present case, Smith filed the appeal but did nothing to prosecute it other than requesting extensions of time. He did not order the transcripts, file the Transcript Information Sheet, or file an appellate brief. He then advised petitioner to dismiss the appeal in favor of bringing a § 2255 motion or possibly obtaining a Rule 35 motion from the government. As discussed above, petitioner could have pursued a direct appeal concurrently with both of these courses of action. Finally, on October 17, when he secured petitioner's assent, Smith was, if not panicked, anxious for petitioner to agree to dump the appeal. The brief was due that day, he had already received two extensions from the court of appeals, had not ordered the transcripts and was about to leave the Boyle firm. Thus, as in Griffin, it may be appropriate to presume that Smith's deficient performance caused prejudice.

Even if I do not presume prejudice, petitioner has established prejudice under the Flores-Ortega standard. As discussed above, ordinarily a defendant must demonstrate a reasonable probability that, but for counsel's errors, the result would have been different.

8

Strickland, 466 U.S. at 694. In the context of foregoing an appeal, the defendant must show that but for counsel's deficient performance there is a reasonable probability that he would have pursued the appeal. See Flores-Ortega, 528 U.S. at 484. Petitioner has made that showing. He has consistently and credibly indicated that he desired to pursue his direct appeal and would have done so but for Smith's deficient advice.[5] See id. at 485 (stating that evidence that the defendant expressed a desire to appeal is highly relevant). Further, his appeal followed a trial rather than a guilty plea, and thus there was a greater probability that he had appealable issues. See id. at 480 (stating that a trial is more likely to produce appellate issues than a guilty plea). Finally, in his § 2255 motion petitioner has specified non-frivolous grounds for appeal.[6] See id. at 485 (stating that the existence of non-frivolous grounds for appeal is highly relevant to the prejudice inquiry).

---

[5]Because Smith ineffectively assisted petitioner, I need not decide exactly who said what during the October 17 phone call. However, for the reasons stated, I conclude that petitioner did not fully understand what he was agreeing to. In this connection, I note also that the statement Smith drafted for petitioner to sign (Petr.'s Ex. 117) was not in substantially the form required by Circuit Rule 51(f) (see Petr.'s Ex. 118). Of particular note, the form petitioner signed omitted the language "I concur in my attorney's decision and hereby waive all rights to object or raise any points on appeal." (Id.) And, the curious use of the word "withdraw" in the statement rather than "dismiss" tends to support petitioner's statement that he thought he was putting the appeal on hold.

[6]The issue that petitioner raises concerning count 4, inducing a person to travel in interstate commerce in execution of a scheme to defraud, 18 U.S.C. § 2314, is non-frivolous. The statute appears to require that the person induced to travel be a victim of the fraud. United States v. Myerson, 18 F.3d 153, 164 (2d Cir. 1994). In this case, the person who allegedly traveled across state lines was a courier for petitioner's business, not one of the investors petitioner defrauded. It may be, as the government argues, that this employee was also a "victim," but the issue is not frivolous.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **GRANTED** on the issue of ineffective assistance of appellate counsel, as stated herein. The appropriate remedy in this situation is to vacate the original judgment, enter a new one, and afford the petitioner ten days to appeal with the assistance of counsel. United States v. Villa, No. 96 C 5679, 1997 U.S. Dist. LEXIS 11490, at *4-5 (N.D. Ill. July 30, 1997) (citing United States v. Dumas, 94 F.3d 286, 289 (7th Cir. 1996); United States v. Mitchell, 58 F.3d 1221, 1223 (7th Cir. 1995)); see also Griffin, 109 F.3d at 1219.

**IT IS THEREFORE ORDERED** that the original Judgment dated July 3, 2002, is vacated, and that a new Judgment be entered. Petitioner has ten days from the date of the entry of the new Judgment to file an appeal.

**IT IS FURTHER ORDERED** that petitioner's remaining § 2255 claims are **DISMISSED WITHOUT PREJUDICE** and may be raised on direct appeal.

**FINALLY, IT IS ORDERED** that counsel is hereby appointed to represent petitioner in filing a notice of appeal and in the appellate proceedings. The court will delay re-entering the Judgment for a period of ten days to afford Federal Defender Services, Inc. time to assign counsel.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge